Glenn E. Morton, J.
The defendants were jointly indicted by the Genesee County Grand Jury June 8, 1967 for the crime of attempted robbery in the first degree in violation of sections 2120, 2124 and 2 of the New York State Penal Law. Following the arraignment thereon, both defendants pleaded not guilty thereto.
*903 Prior to trial both defendants duly moved to inspect the Grand Jury minutes and in the alternative for an order dismissing the indictment. The defendant, Fred Smith further moved for an order directing that he be tried separately from the defendant, Henry Walker. In support of the motion to dismiss the indictment, the defendants herein advance that the June 1967 Grand Jury was illegally constituted in that it was not selected and impanelled pursuant to the procedural requirements of article 18 of the Judiciary Law of the State of New" York; and that certain provisions of said article 18 pertaining to a $250 property requirement, are unconstitutional in that persons who are otherwise qualified to serve were systematically excluded by reason of race and economic circumstances.
The matter came on for a hearing before this court on August 11, 17, and 25, 1967. At the hearing all available records concerning the selection of the June 1967 Grand Jury were received and testimony was taken concerning the particular procedure followed in connection therewith. The prosecution concedes, for purposes of the motion, that the procedural requirements of article 18 were not completely followed in the instant case, but argues that such an omission in and of itself is not sufficient to invalidate the indictment and that the Grand Jury as selected is legally constituted.
On February 16, 1966 Genesee County elected to be governed by the provisions of article 18 of the Judiciary Law for the purpose of selecting grand jurors and created the office of Commissioner of Jurors to effectuate the procedures therein, (Genesee County Board of Supervisors 1966, Resolution Nos. 34 and 36). To further implement the newly adopted procedure, the County Jury Board was established consisting of a Supreme Court Judge, the Hon. Reid S. Mottle, the late Genesee County Court Judge, the Hon. Philip J. Weiss and a member of the Board of Supervisors, the Hon. Morris G. Cuhhiwgham. (Appellate Division of the Supreme Court, Fourth Judicial Department order dated March 8, 1966; Judiciary Law, § 652; Genesee County Board of Supervisors 1966, Resolution No. 35.) There is no record that the Genesee County Jury Board ever convened since its inception March 8, 1966. The function of discharging the responsibilities of Commissioner of Jurors was undertaken by the Genesee County Clerk, the Hon. Charles A. Roggow, and a list of trial and grand jurors was prepared, partly pursuant to article 18 and partly pursuant to article 16 of the Judiciary Law. There further is no record that the County Clerk prior to performing his duties *904 was officially appointed as the Commissioner of Jurors by the County Jury Board. It also appears that there was no annual meeting of the County Jury Board during the months of November and December, 1966, as required by law, to approve and select the prepared list of jurors for use during the year 1967. It is thus readily apparent that certain procedural requirements were not fulfilled in the selection of the June 1967 Grand Jury. The question is now whether such omission is sufficient to invalidate the indictment returned against the instant defendants.
It is fundamental that an indictment is an accusation in writing presented by a Grand Jury to a court charging a person with a crime (Code Crim. Pro., § 247); and that all crimes.prosecuted in either Supreme Court or County Court must be prosecuted by indictment (N. Y. Const., art. I, § 6; Code Crim. Pro., § 222). The Code of Criminal Procedure defines a Grand Jury as a “body of persons, returned at stated periods from citizens of the county, before a court of competent" jurisdiction, and, chosen l>y lot, and sworn to inquire of crimes committed or triable in the county.” (Code Crim. Pro., § 223; emphasis added.) The Constitution itself does not define the mode of selecting a Grand Jury and the power to prescribe the particular procedure to be followed is left to the Legislature. The Legislature is the competent authority to enact such regulations and make such changes respecting the manner of selecting and procuring grand jurors as it might deem necessary as long as it does not violate the essential feature of the system. (People v. Petrea, 92 N. Y. 128.) The procedure for the formation of a Grand Jury formerly contained in the Code of Criminal Procedure was repeated April 6, 1956 (L. 1956, ch. 402, § 5) and the subject matter is now covered in articles 16 through 18-B of the Judiciary Law.
The purpose of adopting article 18 of the Judiciary Law was to modernize and streamline the selection of jurors in order to improve the mechanical administration of justice. The Governor in approving the bill March 29, 1954 stated in his memorandum 11 A substantially similar system has been in effect in the City of New York since 1940. It has simplified the administration of the jury system in that city and provided jurors of high calibre ”. (1954 N. Y. Legis. Amu., p. 388.) The Governor, further adopting the language of the State Crime Commission, stated that “ The public interest demands a simple efficient and uniform jury system ”. It is the opinion of this court therefore that in enacting this statute the Legislature had no intent to legislate as to the validity of indictments or *905 to protect those whose activities the Grand Jury was summoned to investigate. The purpose of the statute being such, any irregularities in the summoning and impanelling of a Grand Jury thereunder will not automatically invalidate the indictments it returns, in the absence of showing of prejudice or possibility of prejudice to the accused. (United States v. Wallace & Tiernan, 349 F. 2d 222.)
The manner of selection is no consequence to these defendants. “ Certainly this is true when the statute whose precise requirements have been overlooked is one intended to protect the public treasury and minimize the demands of jury service, rather than safeguard the rights of the accused.” (See People v. Lieber, 357 Ill. 423.) (United States v. Wallace & Tiernan, supra, pp. 227-228.)
There is ample authority to support this position in New York State. The Court of Appeals has stated that there is no authority to set aside an indictment found by a Grand Jury because there were errors in applying the statutory method of procuring an impartial jury where the jury as impanelled conforms to the traditional concept of a Grand Jury and consists of a qualified group of men and women who represent a fair cross section of impartial citizens of the county. (People v. Prior, 294 N. Y. 405.)
The test therefore in determining the validity of the indictment is not whether the Grand Jury which returned it was impanelled according to law, but rather whether the Grand Jury is qualified and conforms to the traditional concept of a Grand Jury. A search of the record in this case indicates that the June 1967 Grand Jury met all the essential requirements of this test. Except, as hereinafter mentioned no suggestion has been shown that the panel of jurors was not representative or that any of the jurors were not legally qualified or that the Grand Jury proceedings were in any other respect improper.
The Judiciary Law itself provides that in any county electing to be governed by the provisions of article 18, jury lists then in existence may continue to be used pending the development of a new list, and no further examination of a person shall be required where the qualifications were previously established under the prior law. (Judiciary Law, § 501, subd. 2.)
This procedure was followed in part in selecting the jury list for the June 1967 Grand Jury, The remaining names on the jury list were actually examined pursuant to article 18 and found to be qualified. Accordingly the court finds that the use of a combined jury list composed in part of names under both *906 the new and old system, is sufficient and creates no prejudice or possibility of prejudice to the defendants herein. To hold otherwise would put form over substance. Likewise the contention that the members of the instant Grand Jury were drawn from the master list containing some 8,000 names without going through the intermediate step of drawing 300 names is innocuous as far as these defendants are concerned, and is without merit.
The contention is also made that the June 1967 Grand Jury was illegally constituted in that the provisions set forth in article 18 of the Judiciary Law requiring that a juror must possess certain property qualifications in the amount of $250 real or personal property, are unconstitutional. The defendants argue that such a requirement systematically excludes a substantial segment of the population and violates their rights to an impartial jury representing a cross section of the community. As authority they cite two recent cases which were not directly on point, but discussed the issue in the form of dicta. (Chestnut v. People, 370 F. 2d 1 and People v. Thomas, 53 Misc 2d 427.) The instant question was squarely before the court in People v. Ruppert (53 Misc 2d 845). Here this court held this specific requirement constitutional, after commenting on the relative ease of meeting such a qualification with the advent of television as a fundamental national commodity in our affluent society. The court went on to state (pp. 848-849) that ‘ ‘ It does not seem unreasonable in our ‘ free society ’ to have minimal ownership in something real or personal to invest a person with the privilege of performing a vital public function, such as being a member of the Grand Jury or trial jury, to whom the free rights of individuals, as well as great public interests, are committed for resolution in the respective spheres granted to these bodies by custom and statute.” This court agrees that such a requirement is not discriminating and within the State’s power to set reasonable standards, should it so see fit.
The granting of a motion to inspect the Grand Jury minutes is a matter of discretion which is not to be exercised arbitrarily nor without good reason shown by the moving party based on fact and not mere assumption. (People v. Martines, 15 Misc 2d 821.) In granting a motion for inspection, facts must be shown from which there is reason to believe that the evidence before the Grand Jury is insufficient or illegal. (People v. Howell, 3 N Y 2d 672.) This court in considering the matter before it and after reviewing the Grand Jury minutes, is of the opinion that the indictment is founded on legal and sufficient evidence as to both defendants.
*907 When defendants are jointly indicted, the question whether there should be separate trials is addressed primarily to the practical good judgment of a Trial Judge. In the ordinary case, a ruling directing a joint trial will be on the safe side, though confessions or admissions made by one defendant will not be binding on another. The point at which discretion ends and severance becomes a duty is at times hard to fix. (People v. Feolo, 282 N. Y. 276.) One who makes no confession must be found guilty, if at all, only on proof independent of a confession by a codefendant. This court after reviewing all of the evidence before it feels that, in the sound exercise of its discretion and in fairness to the defendant Fred Smith, the motion to sever should be granted and separate trials ordered.
Prepare orders in conformance with this opinion.